# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2020

Lyle W. Cayce
Clerk

No. 20-30232

Laureen Olson,

*Plaintiff—Appellant*,

*versus*

Kenneth Schnauder; Kurt Loup; Patrick C. Breaux; Luis M. Alvarado; Christopher M. Foret; Kent C. Guidry; Corey J. Hebert; Marcus C. Naquin; Robert E. Ruel, III; Gregory L. Waddell; Louisiana Patients Compensation Fund; Jennifer Decuir; Oversight Board of Louisiana Patients Compensation Fund,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CV-645

---

Before Clement, Ho, and Duncan, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Laureen Olson sued the Louisiana Patient's Compensation Fund, the Fund's Board, the Board's members, and two officers of the Fund (collectively "defendants"), in federal district court. She asserted a claim for excess damages under Louisiana's Medical Malpractice Act ("MMA"), along with related claims, all arising from her malpractice action against Dr. Paul Toce. Applying Louisiana law, the district court dismissed her suit with prejudice for failure to state a claim. We AFFIRM.

**I.**

One instance of medical malpractice has spawned multiple suits by Olson, including this one. A brief timeline will set the stage.

On February 14, 2011, Olson sued Dr. Paul M. Toce, Jr., M.D. ("Toce"); Dr. Paul M. Toce, Jr., A Professional Medical Corporation ("Toce APMC"); and "ABC Insurance Company" (Toce's insurer, later identified as the Louisiana Medical Mutual Insurance Company ("LAMMICO")) in Louisiana's Fifteenth Judicial District Court. She alleged breaches of the standard of care under the MMA and intentional tortious acts "outside the provisions" of the MMA. Olson alleged the malpractice occurred from March 2010 to June 2010. That same day, Olson submitted a damages petition and request for a Medical Review Panel to the Louisiana Commissioner of Administration, asserting the same claims. On December 12, 2012, the Medical Review Panel issued an opinion, finding that Toce and Toce APMC "failed to meet the applicable standard of care as charged in the complaint." On April 9, 2013, Olson filed a second lawsuit against the same defendants, in the same court, re-alleging the same claims, but with additional allegations regarding the Medical Review Panel's findings and Toce's insurance coverage.

The two lawsuits were consolidated, and Olson eventually settled her claims for $140,000, reserving her rights and claims against the state

No. 20-30232

Patient's Compensation Fund ("the Fund" or "PCF") for damages in excess of $100,000, future medical payments, and litigation expenses. On September 26, 2016, Olson filed a Petition for Approval of Settlement. The PCF objected to the settlement, arguing it did not assign dollar values distinguishing medical malpractice from non-malpractice claims. The trial court sustained the PCF's objections in November 2016, but the Louisiana Third Circuit Court of Appeal reversed and approved the settlement. *See Olson v. Toce*, 2017-36 (La. App. 3 Cir. 6/7/17), 222 So. 3d 775.

Back in the trial court, Olson filed a Motion to Dismiss with Reservation of Rights. On January 22, 2018, the trial court dismissed the claims against Toce, Toce APMC, and LAMMICO with prejudice, retaining them as nominal defendants "to the extent required by law." Ordinarily, this would allow Olson to extinguish her claims against those defendants while continuing to pursue damages from the PCF as intervenor. After moving unsuccessfully to recuse the presiding judge, however, Olson filed a motion to dismiss the consolidated cases without prejudice. On January 17, 2019, the court granted the motion.[1]

On May 20, 2019, Olson filed the instant case in the Western District of Louisiana against the PCF, alleging the same malpractice claim and also claiming the PCF, as well as its Board members and two other officers, violated their duties to her under the MMA by failing to promptly and fairly settle her malpractice claims.[2] Because Olson had moved to Tennessee, she

---

[1] Later in 2020, Olson filed another suit in the same court.

[2] Olson also filed another state court lawsuit, in Louisiana's Nineteenth Judicial District Court, with similar allegations and claims for relief. In this case, the trial court sustained the PCF's Exception of Prescription and further found, on its own motion, that it lacked subject matter jurisdiction over Olson's malpractice claim as a result of her failure to follow the mandatory procedures set forth in the MMA. Judgment was entered on May 17, 2019. Olson has appealed this ruling to Louisiana's First Circuit Court of Appeals.

No. 20-30232

invoked the district court's diversity jurisdiction. Adopting the magistrate judge's report, the district court concluded Olson failed to state a claim under Rule 12(b)(6) because she had not complied with the MMA's requirements for seeking excess compensation from the PCF. The court therefore dismissed Olson's case with prejudice. Olson timely appealed.

## II.

We review *de novo* a district court's dismissal for failure to state a claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.

Olson's complaint alleges seven causes of action, five under the MMA itself, and two alleging violations of "general tort law" concerning fiduciary duties. We separately address these two sets of claims.

## A.

Olson claims the PCF is liable under the MMA for excess general damages, past and future medical expenses, litigation costs, and judicial interest, all arising out of her malpractice claim against Dr. Toce. The district court concluded Olson failed to state a claim because she had not followed mandatory claim requirements under the MMA. On appeal, Olson claims this was error. To assess whether she is correct, we must decide two questions: (1) whether Olson disobeyed the MMA's rules for bringing excess damages claims against the PCF, and (2) if so, whether that Louisiana law framework applies in a federal diversity action.

Louisiana has enacted an elaborate system to redress claims of medical malpractice. Health care providers' malpractice liability is capped at $100,000 per patient. LA. STAT. ANN. 40:1231.2(B)(2). A patient may seek further damages—up to the total statutory maximum of $500,000, *id.* at 40:1231.2(B)(1)—only from the PCF. *Id.* at 40:1231.2(B)(3)(a). Sometimes a plaintiff settles a case with a provider or her insurer without settling with the PCF; in such a case, that "partial settlement . . . shall not bar the continuation of the action against the [PCF] for excess sums." *Id.* at 40:1231.2(D)(5). That plaintiff would move to dismiss the case "with reservation of rights," retaining the original defendants as merely nominal parties, and pursue her claims against the PCF. *See, e.g., Posey v. Singletary*, 2003-37425, p. 12 (La. App. 2 Cir. 9/24/03), 855 So. 2d 853, 860.

> [T]he MMA neither contemplates the PCF as a party defendant, nor gives the PCF status as a co-obligor or insurer of the health care provider. Rather, the PCF is a statutory intervenor "who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of one hundred thousand dollars are payable by the Fund."

*Khammash v. Clark*, 2013-1564, p. 9–10 (La. 5/7/14), 145 So. 3d 246, 254 (quoting *Felix v. St. Paul Fire & Marine Ins. Co.*, 477 So. 2d 676, 680–81 (La. 1985)) (internal citations omitted); *see also Williams ex rel. Williams v. Kushner*, 449 So. 2d 455, 457 (La. 1984). After settling, a plaintiff who wishes to seek excess damages from the PCF must petition "the court in which [her] action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled, . . . [to] demand[] payment of damages from the . . . fund." LA. STAT. ANN. 40:1231.4(C)(1). The plaintiff may then litigate against the PCF according to a bevy of enumerated rules, which "must be followed" to recover excess damages. *See id.* at 40:1231.4(C).

No. 20-30232

We first conclude, as did the district court, that Olson's action against the PCF failed to follow this framework. According to the MMA's rules, she was required to litigate the PCF's liability in her original lawsuit, with the PCF as an intervenor. *See Williams*, 449 So. 2d at 457. Instead, Olson dismissed that suit and filed a new one, in federal court, directly against the PCF, in the absence of the original defendants. By doing so, Olson circumvented Louisiana's requirements for proceeding against the PCF. After settling with LAMMICO, Olson was required to seek "an amount in excess thereof from the [PCF] for a complete and final release," LA. STAT. ANN. 40:1231.4(C), a proceeding statutorily mandated to occur in the Louisiana trial court where she had originally sued. She did not do so. Under Louisiana law, then, Olson's failure to follow the MMA's rules warrants dismissal of her claim. *See Horil v. Scheinhorn*, 95-0967, p. 6 (La. 11/27/95), 663 So. 2d 697, 700 ("In instances where the claimant expects to ultimately recover from the Fund despite his settlement of the provider's liability, [LA. STAT. ANN. 40:1231.4(C)[3]] mandates the procedure that the claimant must closely follow."); *see also Howard v. Mamou Health Res.*, 2012-820, p. 5–6 (La. App. 3 Cir. 3/6/13), 129 So. 3d 72, 75, *writ denied*, 2013-0614 (La. 4/19/13), 112 So. 3d 227 (describing 40:1231.4(C)(1) as mandatory for claims against the PCF).

We next conclude, again agreeing with the district court, that Louisiana's framework applies in a diversity action in federal court. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). We must therefore apply 40:1231.4(C)'s requirements if they are

---

[3] This provision has been re-codified without substantive alteration since *Horil.*

substantive. "Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Gasperini*, 518 U.S. at 427. To do so, we employ an "outcome-determination" test, under which the outcome of a case brought under diversity jurisdiction "should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* at 427–28 (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). Application of this test "must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* at 428 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Louisiana's framework for bringing claims against the PCF is substantive for *Erie* purposes. The rules are embedded in Louisiana's intricate legislative scheme governing medical malpractice liability. In an analogous case, we have held that even "arguably procedural" aspects of state law are substantive for *Erie* purposes when they "are plainly 'bound up' with 'state-created rights and obligations'—that is, the State's underlying scheme of allocating . . . rights." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 337 (5th Cir. 2011) (quoting *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 535 (1958)). In *All Plaintiffs*, we explained we could not "disregard the procedural aspects of the [state] Act without also destroying the rights and obligations that the Act creates." *Id.* The same holds true here.[4] A plaintiff cannot circumvent the MMA's rules by suing in a federal forum. As the

---

[4] Buttressing our conclusion are federal district court decisions treating the "arguably procedural" requirements of 40:1231.4(C) as binding in diversity cases. *See, e.g., Flowers v. Striplin*, No. CIV.A. 01-1765, 2002 WL 1610960, at *2 (E.D. La. July 18, 2002) (reading *Horil* to supply the rule of decision for application of 40:1231.4(C)(2) and to require dismissal); *see also Siegrist v. Kleinpeter*, No. CIV.A.02-2365, 2004 WL 797723, at *1 (E.D. La. Apr. 13, 2004) (treating procedures described in MMA as binding); *Mitchell v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A. 98-1898, 1999 WL 721950, at *6 (E.D. La. Sept. 15, 1999), *aff'd* 212 F.3d 594 (5th Cir. 2000) (unpublished) (same).

district court correctly held, Olson's failure to observe those state law requirements defeats her claim for relief.

**B.**

Olson's claims outside the scope of the MMA allege breaches of fiduciary duties owed her by the PCF and its Board Members, Executive Director, and Claims Manager. She claims that the MMA imposes on defendants a "fiduciary responsibility to medical malpractice claimants," like Olson, which they breached by failing to compensate her fairly and promptly for her damages.

These claims fail because the MMA imposes no such duties on the Fund, its Board, or its other officers.

> The statute creating the Board charges the Board with the defense of the Fund, and specifically provides procedures for the Board to defend the Fund against a claim at trial. Thus, the plaintiff can have no cause of action against the Board for its actions in defending the Fund against a claim.

*Patin v. La. Patient's Comp. Fund Oversight Bd.*, 2007-2394, p. 5 (La. App. 1 Cir. 6/6/08), 991 So. 2d 1135, 1138, *writ denied*, 2008-1415 (La. 10/10/08), 993 So. 2d 1284 (capitalization altered). Like the claimant in *Patin*, Olson "has no claim against the [B]oard for failing to comply with a duty it did not statutorily owe." *Id.*; *see also Khammash*, 145 So. 3d at 256 ("Clearly, when the PCF and claimant dispute the remaining amount due, the PCF is entitled to full discovery and a trial at which, under the statutory provisions and in accord with our jurisprudence, the claimant must prove his damages, if any, attributable to the malpractice in excess of the amount already paid by the defendant physician.").

Although the MMA provides that the PCF "shall be held in trust . . . by the board for the use, benefit, and protection of medical malpractice

No. 20-30232

claimants," LA. STAT. ANN. 40:1231.4(A)(1)(a), it does not follow that the Board owes Olson a duty which it breaches by litigating its alleged liability to her. To the contrary, the MMA itself guarantees the Board "an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense," *id.* at 40:1231.4(C)(5)(a), when it does not agree with a claimant regarding its liability. The district court therefore correctly dismissed these claims with prejudice.

\* \* \*

The judgment of the district court is AFFIRMED.